UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RITU BAJAJ,

                    Plaintiff,                        7:14-CV-1526
                                                  (GTS/ATB)
v.

EMPIRE VISION; ROV DALTON; THOMAS
LAUGHLIN; JULIE COLAVENCENZO; and
DOES 1-100,

                    Defendants.
_____

APPEARANCES:                           OF COUNSEL:

RITU BAJAJ
  Plaintiff, *Pro Se*
1211 Faichney Drive
Watertown, New York 13601

BOND, SCHOENECK & KING, PLLC         THOMAS G. ERON, ESQ.
  Counsel for Defendants               KRISTEN E. SMITH, ESQ.
One Lincoln Center
Syracuse, New York 13202

GLENN T. SUDDABY, Chief United States District Judge

<u>**DECISION and ORDER**</u>

       Currently before the Court, in this *pro se* employment discrimination action filed by Ritu

Bajaj ("Plaintiff") against Empire Vision, three of its employees, and "Does 1-100"

("Defendants"), are two motions: (1) Defendants' motion to dismiss the action for insufficient

service of process and failure to state a claim upon which relief can be granted, pursuant to Fed.

R. Civ. P. 12(b)(2), (5), and (6) (Dkt. No. 12); and (2) Plaintiff's cross-motion for leave to file

and serve an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) (Dkt. No. 15).  For the

reasons set forth below, Defendants' motion is granted, and Plaintiff's cross-motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows.  (Dkt. No. 1.) Plaintiff, originally from India and Hindu by religion, was employed by Empire Vision Center ("Empire") in Watertown, New York, as a Lead Optometrist, from on or around July 13, 2004, until she was terminated on January 24, 2013.  (*Id.*, ¶¶ 3-4.)  In 2008, Plaintiff received awards for patient care and a "top Doctor of the Corporation award," and consistently received "excellent annual evaluation[s]" for her work from her former supervisor, Thomas Ferris ("Ferris").  (*Id.*, ¶¶ 9-10.)  In December 2009, Ferris was "let go" but, before he left, he informed Plaintiff that Empire "let go" non-white employees "by some made up stories."  (*Id.*, ¶¶ 11-12.)

In 2010, Thomas Laughlin ("Laughlin"), Regional Manager of "Central New York of Empire Vision Centers" and Plaintiff's supervisor after Ferris's departure, awarded Plaintiff a one-half percent salary raise.  (*Id.*, ¶ 13.)  In comparison, Laughlin awarded a two-percent raise to Plaintiff's white colleague, Dr. John Kott.  (*Id.*)

On September 22, 2010, Laughlin reprimanded Plaintiff in writing, but the written form was not signed by Laughlin and contained no details concerning "the alleged incident" for which she was being reprimanded; Laughlin provided no further detail when Plaintiff asked him for an explanation.  (*Id.*, ¶¶ 14-15.)  On the same day, Laughlin directed Plaintiff to "clean the bathroom and pick up the trash" in addition to perform her usual responsibility of seeing patients.  (*Id.*, ¶ 16.)  Plaintiff responded that it was "not her job" to perform such tasks.  (*Id.*, ¶ 18.)  Additionally, on the same day, Laughlin directed that Plaintiff "see at least 6 patients or more per hour."  (*Id.*, ¶ 17.)  In comparison, Plaintiff's "colleague" was expected "to see only 2 patients an hour."  (*Id.*)  On September 28, 2010, Plaintiff filed a "complaint" with Julie

Colavencenzo ("Colavencenzo"), Empire's Human Resources Manager, in relation to Laughlin "regarding discrimination, retaliation and sexual harassment." (*Id.*, ¶¶ 7, 20.)    While working on January 24, 2013, Plaintiff became ill and stated to Rov Dalton[1] ("Dalton"), optician and office manager, that she wanted to go home. (*Id.*, ¶ 22.)  Dalton approved Plaintiff's sick leave. (*Id.*)  Before Plaintiff left, Colavencenzo, Laughlin, and a doctor reported to Plaintiff's "clinic room," wanting to meet with her; Plaintiff felt too ill to meet with them, and left for home. (*Id.* at ¶¶ 23-25.)  On the same date, Colavencenzo sent Plaintiff an e-mail message, terminating her employment and "falsely stat[ing] that [P]laintiff had resigned from the job." (*Id.*, ¶ 26.)

At undisclosed times, Dalton also did the following: (1) scheduled Plaintiff to see "far more patients" as compared to her white colleagues; (2) scheduled Plaintiff to see patients on her lunch break, while her white colleagues "were enjoying a full lunch break"; (3) scheduled Plaintiff to see patients at closing hours "so that she could not get off from work"; and (4) "usually" threatened Plaintiff if she would not follow his orders. (*Id.*, at 5 ¶ 4[a]-[d].)  Moreover, Colavencenzo never informed Plaintiff whether she had completed any investigations related to Plaintiff's "several complaints," and, instead, "worked in cahoot[s] with Dalton and Laughlin" to harass, retaliate against, and terminate Plaintiff without cause. (*Id.*, at 5 ¶ 4[e]-[h].)

Thereafter, Plaintiff obtained a "right to sue" letter from the U.S. Equal Employment Opportunity Commission ("EEOC").[2]  (*Id.*, ¶ 27; Dkt. No. 1 at 8-10 [attaching EEOC's Dismissal and Notice of Rights].)  In October 2013, Plaintiff learned that Laughlin subjected one of

---

[1]    Defendants assert that Plaintiff incorrectly spelled the name of Roy Dalton as "Rov Dalton."

[2]    Plaintiff does not allege in her Complaint when she filed a charge with the EEOC, and the EEOC correspondence attached to her Complaint does not reflect the date of her charge.

Plaintiff's former colleagues, "Dr. Das" (who was also Indian), to similar conduct, including ordering him to clean the bathroom and pick up garbage, as well as threatening to fire him unless he resigned.  (Dkt. No. 1, at ¶ 21.)

Based upon the foregoing, Plaintiff asserts that she was treated in a disparate manner and subjected to discriminatory employment practices by her employers on the basis of her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  (*Id.*, at 4-5 ¶¶ 1-6.)

### B.    Relevant Procedural History

On or about September 19, 2014, the EEOC issued a "right to sue" letter regarding Plaintiff's claims of discrimination.  (Dkt. No. 1 at 9-10.)

On December 17, 2014 (eighty-six days after receiving a "right to sue" letter),[3] Plaintiff filed her Complaint in this action.  (Dkt. No. 1.)  On the same date, the Court issued to Plaintiff a Summons and Proof of Service Form.  (Dkt. No. 2.)  Moreover, the Clerk of the Court issued (1) a Filing Order stating, *inter alia*, that "[t]his filing order is to be *served* on all parties to the action *along with the complaint* or petition for removal within *sixty (60) days* of filing this action," and (2) a copy of the District's General Order # 25.  (Dkt. No. 3 [emphasis added; emphasis removed].)  General Order # 25 states, in relevant part, as follows:

> When serving a Complaint or Notice of Removal, *the filing party shall serve on all other parties* a copy of this General Order and the attached materials.  Service of process should be completed within Sixty (60) days from the initial filing date.  This expedited service is necessary to fulfill the dictates of the Civil Justice Reform Act Expense and Delay Reduction Plan of this court and to

---

[3]    There is a presumption that an EEOC "right to sue" notice is received three days after it is sent and, "in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice."  *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996) (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 & n.1 [1984]).

> ensure adequate time for pretrial discovery and motion practice.
> However, in no event shall service of process be completed after
> the time specified in Fed. R. Civ. P. 4, or any other Rule or Statute
> which may govern service of process in a given action.

(*Id.* [emphasis added].)  Also on December 17, 2014, the Court mailed Plaintiff a copy of the

District's *Pro Se* Handbook.  (Dkt. No. 4.)  Page seventeen of the *Pro Se* Handbook states as

follows:  "If you are not proceeding with your action *in forma pauperis*, you will be responsible

for serving the summons and complaint on each defendant, in accordance with Federal Rule of

Civil Procedure 4."  U.S. District Court for the N.D.N.Y. *Pro Se* Handbook, at 17

(http://www.nynd.uscourts.gov/sites/nynd/files/forms/Pro_Se_Handbook_2013_6-19-2013.pdf

[last accessed December 1, 2015]).

On December 19, 2014, Magistrate Judge Andrew T. Baxter issued an Order, noting,

*inter alia*, that Plaintiff was "responsible for proper service on all defendants" pursuant to Fed.

R. Civ. P. 4 and Local Rule 4.1 of the Local Rules of Practice of this Court.  (Dkt. No. 5 at 1-2

[Order filed 12/19/2014].)

On February 23, 2015 (sixty-eight days after Plaintiff filed her Complaint), Magistrate

Judge Baxter issued a Text Order in which he noted that the sixty-day period for service of

process had elapsed and directed Plaintiff to file a written status report by March 9, 2015,

advising the Court of the status of the action.  (Text Order filed 2/23/2015.)  Magistrate Judge

Baxter further directed Plaintiff to file proof of service, if service had been completed, and

advised Plaintiff that she could "submit a written request for an extension of such time" if

needed.  (*Id.*)

On March 9, 2015, Plaintiff filed a request for an extension of time in which to serve

Defendants.  (Dkt. No. 7.)  Plaintiff advised that she "had been searching for an attorney to

represent her," but was unable to agree on a legal fee with several law firms that she had contacted. (*Id.* at 3.) Plaintiff further advised that she was going to contact Empire to attempt to settle the case, and that she would advise the Court as soon as she found an attorney or settled the case. (*Id.*) Plaintiff did not further specify any reason why she had not served Defendants or elaborate any steps she had taken to attempt to effect service. (*Id.*)

On the same date, the Court issued a Text Order, extending Plaintiff's time to effect service by sixty days, to May 8, 2015, and directing Plaintiff to file a status report or request a further extension if proof of service was not filed by that date. (Text Order filed 3/9/2015.)

Plaintiff did not file a status report or proof of service as directed by the Court. On May 14, 2015 (148 days after Plaintiff filed her Complaint), defense counsel filed a notice of appearance on behalf of all identified Defendants. (Dkt. No. 9.) In a letter filed on the same date, defense counsel explained that Defendants had not been served, but defense counsel had learned of the action because it "routinely monitor[ed]" the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service on Empire's behalf. (*Id.*) Defense counsel noted that it was appearing in the action "without waiving any of [Empire's] rights or defenses" for the purpose of filing a motion to dismiss the Complaint, and requested notice of any further extension requests filed by Plaintiff. (*Id.*)

On May 22, 2015, Defendants filed the motion to dismiss currently before the Court. (Dkt. No. 12.) On June 15, 2015, Plaintiff filed a response to Defendant's motion. (Dkt. No. 13.) On June 22, 2015, Defendants filed a reply to Plaintiff's response. (Dkt. No. 14.)

On July 2, 2015, Plaintiff filed a cross-motion to amend her Complaint. (Dkt. No. 15.) On July 17, 2015, Defendants filed a response to Plaintiff's cross-motion. (Dkt. No. 16.) On July 27, 2015, Plaintiff filed a reply to Defendants' response. (Dkt. No. 18.)

6

C.     **Parties' Briefing on Defendants' Motion to Dismiss Plaintiff's Complaint and Plaintiff's Cross-Motion to Amend Her Complaint**

1.     **Defendants' Motion to Dismiss**

Generally, in support of their motion to dismiss, Defendants argue as follows: (1) Plaintiff's Complaint must be dismissed because she failed to serve it within 60 days of filing in accordance with Local Rule 4.1(b) and General Order # 25 or within 120 days of filing as required by Fed. R. Civ. P. 4(m), and, in that regard, (a) neither Plaintiff's *pro se* status nor the reasons given in her initial request for an extension (seeking an attorney and approaching Defendants to discuss a settlement) constitute good cause for further extending Plaintiff's time to serve, (b) Defendants' "actual knowledge of the Complaint" does not excuse Plaintiff's failure to effect service, (c) the Court should decline to exercise its discretion to grant Plaintiff more time to effect service in light of her "utter lack of diligence to protect or assert her rights," including her failure to participate in a scheduled EEOC mediation session in which Empire agreed to take part, and (d) the dismissal of Plaintiff's Complaint should be with prejudice because she is time-barred from filing a new Complaint (inasmuch as her statutory 90-day limitations period to file suit following receipt of a "right to sue" notice has expired); (2) alternatively, Plaintiff's Complaint should be dismissed as time-barred because her underlying discrimination claim was not timely filed with the EEOC in accordance with 42 U.S.C. § 2000(e)-5(e); and (3) in any event, Plaintiff's Complaint must be dismissed as to the individual Defendants because individuals may not be held liable under Title VII.  (*See generally* Dkt. No. 12, Attach. 2 [Defs.' Memo. of Law]; Dkt. No. 12, Attach. 1 [Def. Counsel's Decl.].)[4]

_____

[4]     In support of Defendants' motion, defense counsel filed a declaration and several exhibits related to the procedural history of Plaintiff's EEOC charge.  Plaintiff's EEOC charge bears Plaintiff's signature and is dated December 28, 2013, and Empire received notice of the charge in January 2014. (Dkt. No. 12, Attach. 1 at 5, 7 [attaching EEOC "Notice of Charge of Discrimination" and "Charge of

Generally, liberally construed, in response to Defendants' motion, Plaintiff argues as follows: (1) Defendants incorrectly labeled their motion as one to dismiss when in fact their motion prematurely seeks summary judgment; (2) Defendants' argument that Plaintiff failed to effect service of process was rendered moot by defense counsel's appearance in this action; and (3) Plaintiff timely filed her discrimination complaint with the EEOC by filing, on or about November 17, 2013, an EEOC "Intake Questionnaire," and, thereafter, the EEOC sent her a completed "Charge of Discrimination" form which she signed and returned on December 28, 2013. (Dkt. No. 13 at 3-5 [Plf.'s Opp'n Memo. of Law]; *id.* at 8 [Plf.'s Decl.].)

Generally, in their reply, Defendants argue as follows: (1) Plaintiff has conceded Defendants' argument that individuals may not be held liable under Title VII by failing to oppose that argument; (2) actual notice "does not cure or excuse" the lack of service of process and, relatedly, appearing for the purpose of moving to dismiss the action did not subject Defendants to the Court's jurisdiction; (3) Plaintiff still has not served Defendants, and, in her declaration in

---

Discrimination" as "Exhibit A" to Def. Counsel's Decl.].) Plaintiff's charge was selected for the EEOC's Mediation Program, and Defendants agreed to participate. (*Id.* at 10 [attaching "Mediation Invitation Response Form" as "Exhibit B" to Def. Counsel's Decl.].) A mediation session was scheduled for April 29, 2014, but, according to an e-mail message from the EEOC mediator to the parties, the session was "postponed" on April 28, 2014. (*Id.* at 14 [attaching e-mail message from Elizabeth A. Marcus, Esq., dated 4/28/14, as "Exhibit D" to Def. Counsel's Decl.].) In a separate e-mail message sent on the same date, the mediator elaborated that Plaintiff had indicated that "she is trying to obtain counsel for the meeting," although the mediator had informed her that an attorney was not necessary for the session. (*Id.* at 16 [attaching e-mail message from Elizabeth A. Marcus, Esq., dated 4/28/14, as "Exhibit E" to Def. Counsel's Decl.].) The mediator further explained that she asked Plaintiff for an "update" by the following week, at which point Plaintiff would "need to decide if she" wanted to participate in mediation with or without an attorney, because a case could be held for mediation for only "a short time frame." (*Id.*) In a letter dated June 27, 2014, the EEOC advised defense counsel that Plaintiff's charge was "no longer being considered for mediation" because "one of the parties declined or failed to respond to the EEOC's offer to mediate or an attempt at mediation did not prove successful." (*Id.* at 18 [attaching letter from the EEOC, dated 6/27/2014, as "Exhibit F" to Def. Counsel's Decl.].) Thereafter, Empire submitted a "position statement" to the EEOC. (Def. Counsel's Decl., ¶ 8.) Defense counsel asserts that no settlement discussions with Plaintiff have taken place, and that Defendants were not aware of any attempt by Plaintiff to effect service of process. (*Id.*, ¶¶ 10-11.)

opposition to Defendants' motion, she did not explain any efforts made to effect service or provide any reason for her continuing failure to do so; and (4) Plaintiff has not provided a copy of the EEOC questionnaire she allegedly filed or a specific date upon which she filed it, and thus "the December 28, 2013 filing date controls," rendering her Title VII claims time-barred.  (*See generally* Dkt. No. 14 [Defs.' Reply Memo. of Law].)

> **2.     Plaintiff's Motion to Amend**

> > **a.     Plaintiff's Proposed Amended Complaint**

Plaintiff's proposed Amended Complaint ("PAC") both amplifies and clarifies the factual allegations contained in her original Complaint.  (Dkt. No. 15, Attach. 1 [Plf.'s Proposed Am. Compl.].)  Moreover, Plaintiff seeks to add four additional causes of action.  For the sake of brevity, the Court will not repeat the factual allegations discussed above, but will highlight those factual allegations that Plaintiff seeks to amplify or clarify in her PAC.

Plaintiff is an Asian female of Indian origin with "brown" skin.  (*Id.*, ¶ 4.)  Ferris, Plaintiff's former supervisor (from whom she consistently received excellent evaluations), warned Plaintiff that Laughlin had instructed Ferris "to get rid of all non-white [d]octors."  (*Id.*, ¶ 13.)  Moreover, Laughlin directed Ferris to "hire white [d]octors regardless [of] their level of aptitude."  (*Id.*)

In 2009, Laughlin harassed, and "engaged in sex discrimination" toward, Dr. Phoue Ly, one of Plaintiff's colleagues, who was a Vietnamese female.  (*Id.*, ¶ 15.)  Dr. Ly "could not take the harassment" and transferred to a different Empire office.  (*Id.*)

With regard to Plaintiff's former Indian colleague (Dr. Palash Das), Plaintiff learned that Laughlin "made up some false charges to find a reason to fire him," including that Dr. Pas arrived at work late, left early, was not "social with" colleagues, and sexually harassed male

colleagues when he "patted" them a "few times."  (*Id.*, ¶¶ 24, 26.)  In October 2012, Dr. Pas

resigned from Empire with a severance package after Laughlin, Colavencenzo, and a doctor,

Daniel Levy, threatened to terminate him if he refused.  (*Id.*, ¶ 27.)

The doctor who received a more substantial raise in salary than Plaintiff (John Kott)[5] was

a white American male of Christian faith.  (*Id.*, ¶ 16.)

At some point, Laughlin accused Plaintiff of arriving late for work and leaving early

every day, although Laughlin was "never . . . physically on site."  (*Id.*, ¶ 19.)

At the time she was terminated, Plaintiff's base salary was about $110,000 per year.  (*Id.*,

¶ 33.)  Plaintiff learned that the optometrist who Empire hired to replace her after she was

terminated–Dr. Mark Hersowitz, a white American male–received a salary of about $150,000 per

year, despite being less qualified than Plaintiff.  (*Id.*, ¶¶ 34-35, 46.)

Finally (and directly related to one of the grounds upon which Defendants seek dismissal

of the Complaint), Plaintiff alleges in her PAC that she filed a complaint with the EEOC on

November 17, 2013, within 300 days of her date of termination.  (*Id.*, ¶ 36.)

Based upon these factual allegations (as well as those alleged in her original Complaint

and restated in her PAC), Plaintiff seeks to add the following claims: (1) a claim that Defendants

retaliated against her for filing a discrimination complaint with Colavencenzo by terminating her

employment in violation of Title VII, 42 U.S.C. § 2000e-3(a) (*id.*, ¶¶ 50-57); (2) a claim that

each identified individual Defendant (as well as "Does 1-50") conspired to deprive Plaintiff of

her right to equal protection on the basis of her "color, race, religion, and national origin," in

violation of 42 U.S.C. §§ 1985(3) and 1988 (*id.*, ¶¶ 58-66); (3) a claim that each identified

---

[5]       The PAC spells this individual's last name as both "Kott" and "Knott."  (Dkt. No. 15, Attach. 1, ¶ 16.)

individual Defendant (as well as "Does 1-50") engaged in an enterprise undertaking criminal activity in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* (*id.*, ¶¶ 67-73);[6] and (4) a claim under New York State law that each identified individual Defendant (as well as "Does 1-50") conspired to injure her "mentally, financially, and otherwise" by failing to investigate her complaints against Laughlin and Dalton and terminating her without cause (*id.*, ¶¶ 74-78).[7]

### b.    Parties' Briefing

Generally, in her memorandum of law in support of her cross-motion to amend, Plaintiff argues that the Court should grant her leave to amend for three reasons, stated in summary fashion: (1) Defendants will not be prejudiced due to the fact that this case "has just started"; (2) she has not acted in bad faith and merely seeks to clarify her allegations; and (3) the amendment is not futile because it will enable her to recover damages that she has suffered. (Dkt. No. 15 at 2-3 [Plf.'s Memo. of Law].) Plaintiff devotes the remainder of her memorandum of law to reiterating three arguments raised in the briefing of Defendants' motion to dismiss: (1) the Court has jurisdiction over Defendants because defense counsel filed a notice of appearance; (2) she timely filed a complaint with the EEOC for purposes of 42 U.S.C. § 2000e-5(c) by filing an

---

[6]    Although not alleged in the PAC's "Statement of Parties and Facts" section, Plaintiff alleges, as part of her fourth claim, that Colavencenzo "engaged in" wire fraud and mail fraud by communicating with Dalton regarding Plaintiff's internal complaints. (Dkt. No. 15, Attach. 1 at ¶ 70.) Specifically, Plaintiff appears to allege that Colavencenzo falsely communicated to Dalton (via telephone, mail, and e-mail message) that she "would be coming to investigate" Plaintiff's personnel complaint. (*Id.*) Moreover, Plaintiff appears to allege that, in actuality, Colavencenzo planned to "cover up" Plaintiff's complaints of harassment and had no intention to investigate them. (*Id.*)

[7]    In the portion of her PAC setting forth this claim, Plaintiff alleges that she filed a complaint against Laughlin "regarding sex discrimination, harassment, retaliation[,] etc. [a] few times" and that she filed a complaint against Dalton "regarding harassment, retaliation[,] etc. [a] few times," but Colavencenzo did not investigate or otherwise "remedy the situation." (Dkt. No. 15, Attach. 1 at ¶ 76.)

intake questionnaire; and (3) individuals Defendants may be held liable under Title VII because they had "the power to take an adverse employment action against" Plaintiff.  (Dkt. No. 15 at 4-7.)

Generally, in opposition to Plaintiff's motion, Defendants argue as follows: (1) the Court should strike those portions of Plaintiff's memorandum of law that constitute further argument in opposition to Defendants' motion to dismiss, which has been fully briefed; and (2) Plaintiff's motion to amend is futile because (a) the PAC's "revised" Title VII claims are still subject to dismissal for the same reasons as the Title VII claim advanced in her original Complaint (insufficient service of process, timeliness, and the lack of individual liability), (b) the proposed civil rights conspiracy claim pursuant to 42 U.S.C. § 1985(3) is barred by the intracorporate conspiracy doctrine, and (c) the proposed RICO claim is legally and factually deficient because she has not alleged an act independently wrongful under RICO, her allegations of Colavencenzo's "mail fraud" and "wire fraud" do not meet the definitions of those crimes, and she has not satisfied the heightened pleading standard under Fed. R. Civ. P. 9(b).  (*See generally* Dkt. No. 16 [Defs.' Opp'n Memo. of Law].)

Generally, in her reply, Plaintiff again reiterates arguments that she first advanced in opposition to Defendants' motion to dismiss.  (Dkt. No. 18 at 2-5 [Plf.'s Reply Memo. of Law].) With regard to her motion to amend, Plaintiff argues as follows: (1) "[i]t is very likely that" her federal civil conspiracy claim falls into an exception to the intracorporate conspiracy doctrine, and Defendants may not assert this defense until the summary judgment stage of litigation; (2) she has alleged facts plausibly suggesting that Defendants violated RICO, as required by *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); and (3) Defendants did not raise any argument regarding Plaintiff's proposed civil conspiracy claim under New York state law.  (*Id.* at 5-6.)

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO SERVE PROCESS

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (internal quotation marks omitted). Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Court's Local Rules of Practice shorten the service requirements under Fed. R. Civ. P. 4. Specifically, Local Rule 4(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4." N.D.N.Y. L.R. 4.1(b).

Defendants argue that Plaintiff's failure to serve process warrants dismissal under both, or either, Fed. R. Civ. P. 12(b)(2) and (5). (*See* Dkt. No. 12, Attach. 2 at 1 [explaining that Defendants seek dismissal "pursuant to Rules 12(b)(2), (5), and (6) of the Federal Rules of Civil Procedure"].) The general legal standard governing a motion brought pursuant to Fed. R. Civ. P. 12(b)(2) is the same as the general legal standard governing a motion brought pursuant to Fed. R. Civ. P. 12(b)(5): the court must look to matters outside the pleadings to determine the merits of whether the court lacks personal jurisdiction and/or service of process was insufficient;[8] the

---

[8]    Districts courts may consider "materials outside the pleadings" in adjudicating a motion to dismiss for lack of personal jurisdiction. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). "Similarly, materials outside the pleadings may be considered without converting a

plaintiff bears the burden of demonstrating that the court has personal jurisdiction and/or service was sufficient; and, where the court has not held an evidentiary hearing on the issue, to survive dismissal, the plaintiff need only establish a *prima facie* case of personal jurisdiction or sufficient service (based on sworn affidavits or other competent evidence).[9]  Where a defendant's legal argument in favor of dismissal for lack of personal jurisdiction is based on the asserted insufficiency of plaintiff's service of process, the issue (whether construed as arising under Fed. R. Civ. P. 12[b][2] or Fed. R. Civ. P. 12[b][5]) is whether plaintiff's service of process on defendant was insufficient under Fed. R. Civ. P. 4, and whether grounds exist to grant plaintiff an extension of time to serve under Fed. R. Civ. P. 4(m).

As a general principle, "'[w]hen dealing with *pro se* parties, courts interpret the rules dealing with service of process liberally.'"  *Momot v. Derkowski*, 13-CV-0987, 2014 WL 4637038, at *2 (N.D.N.Y. Sept. 16, 2014) (Hurd, J.) (quoting *St. John Rennalls v. Cty. of Westchester*, 159 F.R.D. 418, 420 [S.D.N.Y. 1994]); *accord, Pride v. Summit Apartments*, 09-CV-0861, 2010 WL 2521776, at *2 (N.D.N.Y. June 16, 2010) (Suddaby J.).

A.    **Good Cause**

Under Rule 4(m), "it is clear . . . that an extension is always warranted upon a showing of 'good cause[.]'"  *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).  "Good cause is 'generally found only in exceptional circumstances where the plaintiff's failure to serve process

---

motion to dismiss for insufficient service of process, under Rule 12(b)(5), into a motion for summary judgment." *Tolliver v. Lilley*, 12-CV-0971, 2014 WL 6455752, at *4 (S.D.N.Y. Oct. 24, 2014); *accord, Flemming v. Moulton*, 13-CV-1324, 2015 WL 5147035, at *4 (N.D.N.Y. Sept. 1, 2015) (D'Agostino, J.).

[9]    *Compare Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566-67 (2d Cir. 1996) (reciting standard on motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12[b][2]) *with Primary Succession Capital, LLC v. Schaeffler, KG*, 09-CV-0735, 2010 WL 4236948, at *1 (S.D.N.Y. Oct. 26, 2010) (reciting standard on motion to dismiss for insufficient service of process pursuant to Fed. R. Civ. P. 12[b][5]).

in a timely manner was the result of circumstances beyond its control.'" *Stuart v. Paulding*, 12-CV-0025, 2013 WL 1336602, at *3 (N.D.N.Y. Mar. 28, 2013) (Mordue, J.) (quoting *E. Refractories Co., Inc. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 [S.D.N.Y. 1999]); *accord, Wheat v. Potter*, 08-CV-6117, 2009 WL 3871632, at *1-2 (W.D.N.Y. Nov. 18, 2009). "Courts generally consider three factors to determine whether there is good cause within the meaning of Rule 4(m): '1) the existence of circumstances that made service difficult or impossible, 2) whether the plaintiff was represented by counsel, and 3) the effect of dismissal on plaintiff's claims.'" *Troeger v. Ellenville Cent. Sch. Dist.*, 12-CV-1882, 2014 WL 1302051, at *2 (N.D.N.Y. Mar. 31, 2014) (Hurd, J.) (quoting *Tanner v. Lowe's Home Ctr., Inc.*, 11-CV-1454, 2013 WL 4424979, at *3 [N.D.N.Y. Aug. 14, 2013] [Suddaby, J.]). "[I]n the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Zapata*, 502 F.3d at 198.

**B.    Extension in the Court's Discretion**

"[A] district court *may* grant an extension in the absence of good cause, but it is not required to do so." *Id.* at 197; *accord, Troeger*, 2014 WL 1302051, at *2; *Stuart*, 2013 WL 1336602, at *4 ("The Advisory Committee Notes to Rule 4(m) state that courts may 'relieve a plaintiff of the consequences of an application of [the rule] even if there is no good cause shown.'"). "The Court should exercise this discretion if there is any decent ground in the picture at all to explain the delay." *Tanner*, 2013 WL 4424979, at *4 (citation omitted); *accord, DiFillippo v. Special Metals* Corp., 299 F.R.D. 348, 357 (N.D.N.Y. 2014) (D'Agostino, J.) ("'In deciding whether to grant such an extension, courts balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party.'"); *see also E. Refractories, Co., Inc.*, 187 F.R.D. at 506 ("Factors to be considered [with regard to a discretionary extension]

are: (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision."). "However, courts have refused to find justifiable excuse when the plaintiff's neglect and inadvertence are unaccompanied by a diligent effort to identify and remedy the service defect quickly." *Stuart*, 2013 WL 1336602, at *4.

## III.     ANALYSIS

### A.     Whether Plaintiff's Complaint Should Be Dismissed for Insufficient Service of Process

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memoranda of law. (Dkt. No. 12, Attach. 2, at 4-10 [Defs.' Memo. of Law]; Dkt. No. 14, at 1-3 [Defs.' Reply Memo. of Law].) To those reasons, and out of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court adds the following analysis.

First, Plaintiff's contention, in essence, that Defendants forfeited any defense based upon personal jurisdiction or service of process when their counsel appeared in this action (and that she therefore was not required to serve process) lacks merit. (Dkt. No. 13 at 3-4 [Plf.'s Opp'n Memo. of Law] [citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)]; Dkt. No 15 at 4-5 [Plf.'s Memo. of Law] [citing *Ins. Co. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982)].)[10] Plaintiff is correct that a defendant *may* waive or forfeit a

---

[10]     Plaintiff's briefing in this action is plagued by three procedural violations: (1) she has filed a reply on her cross-motion to amend (a non-dispositive motion) without prior leave of the Court in violation of Local Rule 7.1(b)(2), which expressly states that "[p]rior permission to file a reply does not

personal jurisdiction defense, and that a defendant *may* be estopped from asserting a defense based upon the lack of personal jurisdiction. *Ins. Co. of Ireland, Ltd.*, 456 U.S. at 703-05; *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999) ("Atlas participated in pretrial proceedings but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer. These circumstances establish a forfeiture."); *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1095-96 (2d Cir. 1990) (concluding that defendant "waived" its right to challenge plaintiff's insufficient service of process upon defense counsel because defendant did not "adequately assert[]" that defense in its answer or move to dismiss on that ground until nearly two years later, and defense counsel made no attempt to contact plaintiff informally to advise him that counsel was not authorized to accept service); *Mahar v. U.S. Xpress Enters., Inc.*, 688 F. Supp. 2d 95, 104 (N.D.N.Y. 2010) (Sharpe, J.) (concluding that defendant "waived her defense of improper service" because she did not move to dismiss based upon the defense, joined in seeking removal and asserting counterclaims, engaged in discovery, and raised the defense in a motion for summary judgment two years and nine months after filing her answer).[11]

---

exist simply because CM/ECF generates a deadline for a reply on a nondispositive motion" (emphasis removed); (2) she has replied to the arguments asserted in Defendants' reply (on their motion to dismiss) in violation of Local Rule 7.1(b)(1); and (3) she has failed to combine her brief in opposition to Defendants' motion to dismiss with her brief in support of her cross-motion to amend in violation of Local Rule 7.1(b)(3). The Court notes that Plaintiff acknowledged receipt of a courtesy copy of the Court's Local Rules of Practice and *Pro Se* Handbook on December 17, 2014, which clearly set forth these procedural rules. (Dkt. No. 4.) However, out of special solicitude to Plaintiff, and in the interest of brevity, the Court will set aside these procedural violations.

[11]     "The term 'waiver' is best reserved for a litigant's *intentional* relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate." *Hamilton*, 197 F.3d at 61 (emphasis added).

However, "to preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree of specificity." *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002). Indeed, Fed. R. Civ. P. 12(h)(1) provides that certain defenses contained in Fed. R. Civ. P. 12(b) (including lack of personal jurisdiction and insufficient service of process) must be asserted in either a pre-answer motion (as occurred here) or in the answer or other responsive pleading. Defendants' appearance in an action merely to protect their interests by asserting such a defense does not constitute a waiver or forfeiture of the defense. *See, e.g., Gore v. RBA Group, Inc.*, 03-CV-9442, 2009 WL 884565, at *5 (S.D.N.Y. Mar. 27, 2009) ("Simply filing an appearance is insufficient to constitute a waiver."); *DHL Global Forwarding Mgmt. Latin Am., Inc. v. Pfizer, Inc.*, 13-CV-8218, 2014 WL 5169033, at *6 n.11 (S.D.N.Y. Oct. 14, 2014) (rejecting plaintiffs' argument that a defendant "waived its objections to service of process" because, among other things, defendant "objected to the Court's jurisdiction and service in correspondence with the Court" and, thereafter, "included its objection to jurisdiction and service in its first responsive pleading, namely the motion to dismiss"); *Arthur Williams, Inc. v. Helbig*, 00-CV-2169, 2001 WL 536946, at *3 (S.D.N.Y. May 21, 2001) ("[L]imited participation in pretrial proceedings does not result in waiver of the defense, even where the defendant has actual knowledge of the suit.") (citing, *inter alia*, *Grammenos v. Lemos*, 457 F.2d 1067, 1070 [2d Cir. 1972]).

In this case, defense counsel filed a letter with their notice of appearance, advising the Court that (1) Empire had instructed defense counsel "to appear without waiving any of its rights or defenses," (2) neither Empire nor any of the individual Defendants (who were employed by

Empire) had been served, and (3) Defendants intended to "promptly" move to dismiss the action. (Dkt. No. 10.)  Eight days later, Defendants filed their motion to dismiss, and their only other involvement in this matter has been to file a reply to Plaintiff's opposition to their motion to dismiss and to file an opposition to Plaintiff's motion to amend her Complaint.  (Dkt. No. 12.) There is no basis upon which to conclude that Defendants have forfeited (through inaction) or waived (that is, intentionally relinquished) a defense based upon Plaintiff's undisputed failure to serve process.

Second, although mindful of Plaintiff's special status as a *pro se* civil rights litigant, the Court cannot conclude that "exceptional circumstances" beyond Plaintiff's control prevented service of process such that good cause to extend her time for service exists.  *Stuart*, 2013 WL 1336602, at *3.  With regard to the first factor, Plaintiff has not asserted, in either her letter of March 9, 2015, requesting an extension of time in which to serve the Summons and Complaint or her opposition to Defendants' motion to dismiss, that she has ever attempted to effect service. (Dkt. Nos. 7, 13.)  Plaintiff stated her desire to retain an attorney in her letter requesting an extension of time to serve (and such an extension was granted); but she did not explicitly assert that her failure to effect service was the result of her *pro se* status or that she required advice on how to effect service.  (Dkt. No. 7.)  To the contrary, Plaintiff indicated in her letter that she hoped to contact Defendants and settle her case out of court.  (*Id.* at 3.)  There is no other basis from which to conclude that Plaintiff's ability to effect service was hindered or rendered impossible.  *Troeger*, 2014 WL 1302051, at *2; *cf. Tanner*, 2013 WL 4424979, at *3.  The Court concludes that this factor weighs strongly against a finding that good cause exists.

With regard to the second factor, Plaintiff's special status as a *pro se* litigant, while a relevant factor, "does not excuse h[er] from the procedural rules of law nor the requirements of Rule 4(m)." *Troeger*, 2014 WL 1302051, at *4; *accord, Fudge v. Jones*, 11-CV-0525, 2014 WL 4684861, at *4 (N.D.N.Y. Sept. 19, 2014) (Hurd, J.) ("Here, plaintiff bore the responsibility for effectuating proper service of each named defendant within 120 days; his status as a *pro se* litigant does not excuse him from the procedural rules of law nor the requirements of [the Federal Rules].").  The same date that she filed her Complaint, Plaintiff was issued a Summons, General Order # 25, a copy of the Court's Local Rules of Practice, and a copy of the Court's *Pro Se* Handbook  (Dkt. Nos. 3, 4.)  Two days later, Magistrate Judge Baxter issued an order reminding Plaintiff that she was "responsible for proper service of the summons and complaint" pursuant to Fed. R. Civ. P. 4, Local Rule 4.1, and General Order # 25.  (Dkt. No. 5 at 2.)  After more than sixty days elapsed, Magistrate Judge Baxter issued a Text Order, informing Plaintiff that her time to serve had expired and instructing her to submit a written request for an extension if needed.  (Text Order filed 2/23/2015.)  Plaintiff received an extension, but failed to file proof of service, request a further extension, or otherwise advise the Court of the status of her action as she was directed.  (Text Order filed 3/9/2015.)  Plaintiff has not asserted that she lacked understanding that she was required to serve Defendants, and nothing in the procedural history of the case or the parties' motion papers supports that conclusion.  To the contrary, Plaintiff's request for an extension of time in which to serve suggests she was aware of her responsibility for serving Defendants.  Plaintiff was thoroughly advised that she was responsible for serving Defendants, and there is no evidence (or allegation) that her *pro se* status contributed to her failure to even *attempt* to serve Defendants, or to timely request a further extension in which to

do so.  For those reasons, the Court concludes that Plaintiff's *pro se* status does not support a conclusion that good cause exists here.  *See Troeger*, 2014 WL 1302051, at *4 ("Plaintiff was well aware of the requirements and his responsibility for effectuating timely service and acknowledged the same when he wrote to [the Court] requesting an adjournment of the initial conference.").

With regard to the third factor, it appears that Plaintiff's Title VII claim would be untimely if she attempted to refile it now.  "In order to be timely, a claim under . . . Title VII . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter."  *Gronowicz v. College of Staten Island*, 359 F. Supp. 2d 243, 248 (N.D.N.Y. 2005) (Munson, J.) (citing, *inter alia*, 42 U.S.C. § 2000e-5[f][1]).  Plaintiff filed her Complaint on the 86th day after the date on which she presumably received her "right to sue" letter, and this limitations period was tolled during the 120 days in which she had to serve the Complaint.  *Anselm v. Diamond Packaging*, 14-CV-6388, 2015 WL 2095774, at *6 (W.D.N.Y. May 5, 2015).  On March 9, 2015, the Court granted Plaintiff an extension of time in which to serve the Complaint until May 8, 2015 (at which point 120 days had already expired).  Plaintiff had four days from that date to serve the Complaint.  On May 22, 2015–the date on which Defendants filed their motion to dismiss–Plaintiff still had not effected service of process, and her time to do so expired.  *See, e.g., Anselm*, 2015 WL 2095774, at *6 (finding that plaintiff commenced her action on the 86th day after receiving her "right to sue" letter, but that the 90-day limitations period elapsed after 124 days passed and plaintiff did not serve defendant, and concluding that "even if the Court were to dismiss the action without prejudice under Rule 12[b][5], the practical effect is that the dismissal would be with prejudice").  Nevertheless, because Plaintiff has provided no reason at

all for her failure to timely serve Defendants, request a further extension, or timely advise the

Court as to the status of the action as directed in the Court's Text Order of March 9, 2015,

"dismissal of the action is warranted even though dismissal would effectively bar

recommencement of the action due to the statute of limitations."  *Troeger*, 2014 WL 1302051, at

*5; *accord, Green v. Unwin*, 563 F. App'x 7, 9 (2d Cir. 2014) (concluding that *pro se* plaintiff

had "not advanced a colorable excuse for failing" to comply with court's order to "take steps to

properly serve the Amended Complaint" and that dismissal for failure to serve was therefore not

an abuse of discretion); *Prophete v. New York Police Dep't*, 383 F. App'x 77, 78 (2d Cir. 2010)

("We find nothing in the record to suggest that Prophete made any effort to effect service, moved

for an extension of time to serve Officer Cortes, or demonstrated good cause for failure to effect

service.  In his brief, Prophete neither explains any effort he made to effect service, nor does he

advance some colorable excuse for neglect.") (citation omitted); *Zapata*, 502 F.3d at 199

("Zapata made no effort to effect service within the service period, neglected to ask for an

extension within a reasonable period of time, and has advanced no cognizable excuse for the

delay."); *Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990) ("[D]ismissal is proper even

if it occurs after the expiration of the applicable statute of limitations period, and its effect is to

bar the plaintiff's claim.").

Third, the Court declines to exercise its discretion to grant Plaintiff an extension to effect

service of process, despite the absence of good cause.  *Zapata*, 502 F.3d at 198.  Granted, as

discussed above, Plaintiff will be barred by the statute of limitations from refiling the claim

asserted in her Compliant.  "'[C]ourts have consistently considered the fact that the statute of

limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m)

analysis.'"  *Bastedo v. North Rose-Wolcott Cent Sch. Dist.*, 10-CV-6162, 2011 WL 2110812, at

*2 (W.D.N.Y. May 26, 2011) (quoting *Beauvoir v. United States Secret Serv.*, 234 F.R.D. 55, 58

[E.D.N.Y. 2006]).  Moreover, Defendants do not deny that they had actual notice of the claim

asserted in the Complaint, at least as of the date on which defense counsel filed a notice of

appearance.[12]  The Court acknowledges that these factors weigh slightly in favor of granting

Plaintiff a discretionary extension of time to serve the Complaint.

However, the record does not support the conclusion Defendants took any step to

"conceal" Plaintiff's complete failure to effect service of process.  *E. Refractories, Co., Inc.*, 187

F.R.D. at 506.  Moreover, Defendants point out that "[o]ver two years have passed since her

employment ended with" Empire, and Plaintiff should not be permitted to "elongate" the

litigation by way of her recalcitrance.  (Dkt. No. 12, Attach. 2 at 8.)  Defendants' point is well-

taken.  Most importantly, "and the dispositive factor in this particular case, is that [the Court]

cannot conclude that [Plaintiff] acted diligently to effect service" or that her failure to serve was

the product of *any* justifiable excuse, particularly because Plaintiff has provided *no* such excuse

or demonstrated any effort to effect service.  *Sims v. Wegmans Food Mkt*s., 674 F. Supp. 2d 429,

434 (W.D.N.Y. 2009); *accord*, *Zapata*, 502 F.3d at 198 ("[B]efore we will even consider

vacating a Rule 4[m] dismissal for abuse of discretion, the plaintiff must ordinarily advance

*some* colorable excuse for neglect.") (emphasis added); *Troeger*, 2014 WL 1302051, at *5-6;

---

[12]     Defendants (correctly) argue that, while they independently learned of the Complaint in
this action through their own diligence, their actual notice of this action alone does not excuse Plaintiff's
failure to effect service of her Complaint.  (Dkt. No. 12, Attach. 2 at 6 [citing *Buggs v. Ehrnschwender*,
968 F.2d 1544, 1548 (2d Cir. 1992)]).  The Court notes that the fact that Plaintiff filed an EEOC
complaint did not, in and of itself, provide Defendants with actual notice that Plaintiff filed the Complaint
in this action several months later, particularly because, as the EEOC documents filed by Defendants in
support of their motion suggest (and Plaintiff does not dispute), Plaintiff did not participate in the
scheduled mediation or make further contact with Defendants.

*Stuart*, 2013 WL 1336602, at *6 (stating that "the absolute lack of any justifiable excuse for the delay in service [and] the failure to have even attempted service within the 120 day period" constituted "important factors militating against a discretionary extension").

For these reasons, Defendants' motion to dismiss the Complaint for insufficient service of process is granted, and Plaintiff's Complaint is dismissed without prejudice.[13]

Finally, although Plaintiff moves to amend her Complaint, which is an opportunity typically afforded at least once to *pro se* litigants, Fed. R. Civ. P. 4(m) provides that, where process has not been served and there is no other basis upon which to grant an extension, "the court–on motion or on its own after notice to the plaintiff–*must dismiss the action without prejudice* against th[ose] defendant[s]" not served.  Fed. R. Civ. P. 4(m) (emphasis added); *see, e.g., Makife v. Fed. Home Loan Mortg. Corp.*, 94-CV-4761, 1996 WL 383188, at *3 (S.D.N.Y. July 9, 1996) (concluding that, although plaintiff requested leave to amend her complaint, under former Fed. R. Civ. P 4[j], "dismissal is the appropriate route [for failure to serve process] even when it occurs after the expiration of the applicable statute of limitations period . . . ."); *see also Burks v. Griffith*, 100 F.R.D. 491, 493 (N.D.N.Y. 1984) (Munson, C.J.) (dismissing plaintiff's complaint without prejudice for insufficient service of process and, consequently, concluding that the court "need not reach" plaintiffs' motion to amend).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

---

[13]        *See, e.g., Hurd v. New York City Health and Hosp. Corp.*, 07-CV-3073, 2008 WL 2127659, at *3 (S.D.N.Y. May 20, 2008) (dismissing plaintiff's complaint without prejudice, "as is the usual form of dismissal under Rule 4[m]," despite the likelihood that "a subsequent action arising out of the same facts as this action will be time-barred") (citing *Egbuna v. Syracuse City Sch. Dist.*, 05-CV-0112, 2006 WL 2792744, at *3-4 [N.D.N.Y. Sept. 27, 2006] [Mordue, C.J.]).

**ORDERED** that Plaintiff's cross-motion for leave to file and serve an Amended

Complaint (Dkt. No. 15) is **DENIED**; it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** without prejudice;

and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and

close this case.

Dated: January 8, 2016
　　　Syracuse, New York

　　　　　　　　　　　　　　　　Hon. Glenn T. Suddaby
　　　　　　　　　　　　　　　　Chief U.S. District Judge